Your Honor, if I may, I've got an order that indicated I should start by addressing the issue of whether this Court should even hear the merits of the appeal. Can you please state your appearance? I'm sorry, Michael Conway for appellant and defendant below, Apiriliaco Ltd., DBA, honeydaddy.com. That's fine. Okay. Your Honor, the order indicated that there was case law, as you, I'm sure, are very well familiar with. The case where jurisdiction is argued as improper below should make a Rule 60 motion below before coming to this Court in the Ninth Circuit. And you, the Court asked me to address that issue first. I would just point out that we did make a Rule 60 motion below. In fact, I think counsel summed it up best in the answering brief when he said that. He said that Apiriliaco has leveled every conceivable attack on the judgment below. The reason for that is, Your Honor, first we made an effort to appear in the case. We're told that the appearance was taken off calendar for entry of the default judgment because we hadn't appeared sooner. We then made a motion to vacate that judgment, which was denied. We then, because of time, appealed this case, then immediately made a motion to have the case remanded for the limited purpose of having the motion vacated. The Rule 60B motion. Right. And the Rule 60, which was the motion that was denied because of, I think, alleged violation of a local rule requiring conferring? Rule 55. The Rule 55-60 motion to vacate the default judgment. And the grounds on which that was denied was what? Well, in this jurisdiction, Judge, we're from the same practicing jurisdiction in New York. I've practiced before you on both levels. In this jurisdiction, we're obligated to wait a period of time, a period of days, after filing a report, a meet-and-confer report, before making a motion of any kind. And that would include a motion to vacate a default judgment. Unfortunately, we just didn't have the time to do that. And I tried the motion to vacate default, was denied on the grounds that we didn't wait the requisite period of time and file a meet-and-confer report. We ultimately did do that in expectation that this court would remand for the purpose of hearing the motion to vacate the default. But procedurally, it was required that we get a ruling from the district court that they would consider the motion to vacate the default before this court would remand for us to make that motion. And the district court said, I can't grant that motion because I don't have jurisdiction. Jurisdiction in this case resides with the Ninth Circuit. I can't do anything until the appeal is done. Because you had already launched your appeal. No, because we'd already, because we'd made the appeal. Right, right. So we came back and filed our briefs, and here we are today. So it's not like the cases where the rule is usually employed, where, and I think one of the cases cited at best that there's some sort of gamesmanship in what court you're We tried our best to have the district court hear a motion to vacate the default judgment. We just couldn't get it done for procedural reasons. So let me just ask you, does Cypress allow for service by mail or by international mail? Only when the district court or the judge in the trial court, in this case district court, issues an order allowing for service by mail. So in other words, they follow. That's the only circumstance? Well, actually there are two requirements, one being that it be in connection with a contract entered into in Cypress, which isn't the case here. But let's just assume for the sake of argument that they met that hurdle. Then there can be an application to a judge in a trial court that they allow service or process by mail. And if that order is issued, then Cypress will allow service by mail. They don't allow it as a general rule in every case. It requires a court order. So if Cypress allowed for service by international mail, would this change the court's analysis under this Rule 4 F2A or any other provision for that matter? Your Honor, I think that in that case, it would certainly alter the analysis in this sense. The location that the mail went to was the previous location for Apropilco. So it was not the proper location to serve. But let's just assume for the sake of argument, it was for Apropilco. The other two defendants had nothing to do with that location. A former employee of Apropilco doesn't even live in Cypress. And I think that the court below may have not realized that that was an individual because the first name was translated to the word east. And so it looks like it's a corporation. But it's really an individual whose name I can't pronounce, which is probably why they translated it east. The other defendant was simply a corporate secretary, which is something required under Cypress law. They're not an operating secretary like you would have in the United States. It's just simply more the equivalent of an outside director. They don't do business at location either. So assuming that there was service on Apropilco, there was no service of any kind on those two defendants. And the service on Apropilco, because they moved, raises the issue of excusable neglect. In other words, they didn't know about this case until FedEx finally took this last piece of mail to their new location and said, I think this is for you. And they opened it up and saw that there's a hearing scheduled on the default judgment. And that's when they called counsel. And that's when I called the court and said, we want to appear, and learned that it was too late. So there's certainly an excuse in that regard, Your Honor. The other part of this appeal, though, is there are issues, defenses relating to the merits, and especially the way that the judgment is calculated. There's nothing in the complaint to suggest that there was any sort of a counterfeit mark used. This is a case where, in an advertisement, the word seeking arrangement, which are trademarked by the plaintiff, appeared. Just like you would have, for instance, in a Burger King commercial, and they say McDonald's doesn't flame broil their burgers, we do. There's nothing to suggest that these people are using that mark for commercial purposes. They're identifying themselves in that advertisement as being a place that you should seek your arrangements. So it's a, if anything it's infringement, we would argue it wasn't an infringement. Not a counterfeit mark. Without a counterfeit mark, you can't get to statutory damages, which is what was awarded here, $2 million in statutory damages without any evidence. You want to reserve the balance of your time? Please, Your Honor. Okay. Good morning, Your Honors. May it please the Court, Mark Smith on behalf of Appellee Reflex Media. I think I had the same admonition, which is to start with this same question as to whether or not under various cases, including the Consorzio case, to which opposing counsel referred, actually says that if you have an opportunity to bring a 60B motion, that's in fact what you should do. I think counsel has presented a little bit of a false scenario, this sort of Schrodinger's cat scenario, where I may be in violation of the rule because of this time requirement to me, and confer, or I may not be, but I won't know until later. I won't know until we open the box later and know whether or not I violated it. They tried. They tried to do the Rule 60B, and they were denied because the district court didn't allow it, or they were past the judgment time. Then they felt like they were going to run out of time, and they wanted to make sure they had time to appeal, so they appealed. Then here from the circuit, the circuit tried to get the district court to review the 60B. I'm not quite sure why they should be punished, or somehow that should be held against them, when the record is pretty clear, unless you give me a really good argument. Well, isn't it true that the 60B motion still could have been brought? In fact, the 60B motion could have been brought for up to a year. Well, but the district court told them he wasn't going to consider it. On the motion for indicative ruling, or on the original 60B? Well, if you . . . Pardon me. I'm sorry. No, go ahead. You tell me what you think, because from what I read, it sounded like if I'd gotten that ruling from the district court, I'm not sure I would have gone and filed a Rule 60B motion. Well, the first 60B motion was kicked for a very trivial central district rule issue, which is just the failure to meet, confer, and provide the amount of time. Correct, but they tried again. They ran out of time, actually, and then filed an appeal. But when I say ran out of time, they actually could have filed a motion. And in fact, if you look at the other case that you provided to us, the GlaxoWorld case, that's a case in which the party was in close contact with the court at all times, saying, look, here are the challenges I'm having. There's no evidence of that here. In fact, if what we had seen was, Your Honor, look, sorry, we got kicked on this 60B thing. We're about to file another one. That, pursuant to the Rules of Appellate Procedure, Rule 4, automatically suspends the time that the clock is ticking against the rule, as I understand it. So let me ask you, what's the authority that you say allowed you to serve defendants by mail? So that's, again, I'm going to go back to you, I think, because it's important here. If, in fact, we are on the appeal of a motion for an entry of a default, then we're on an abuse of discretion standard. And it matters here because abuse of discretion is measured at the time that the court made the decision, not based on some future set of facts or law that the court didn't have in front of it. And so that would eliminate. I just want to know if service was proper here. So give me the authority, give me the. Yeah, the answer to that is yes, Your Honor, and here's why. Because the court actually required us to brief the service issue. The service issue itself, whether or not service was proper under the Hague by mail, was actually briefed before the court. Several cases were cited, including cases from within the Ninth Circuit. That issue was decided, I have actually got it here, on the order issued on 2-14-17. So what's the authority? Just ask me my question. What rule 4-F what allowed you to do this? Oh, so it would be the precedent under, well, then I'll go to, sorry, the rule, it would be under rule 4 that allows service by mail in general. But there's certain circumstances when you're doing it internationally. I just, what's, just so you can give me the best response as to why you were allowed to serve these people internationally by mail. So that would be. When that's not permitted in the jurisdiction that you're trying to serve. Because it is permitted if the court authorized it. And where is it that the court authorized it? In its ruling. Can you give me the ER number? I can. The court actually required, so the clerk actually kicked it up to the trial judge and said, I can't rule on international service issues. You're going to have to address this to the court directly. The ER number. That would be more helpful if I could look at it while you're arguing. It's going to be docket entry number 32. Sorry, let me find it here. I guess because this valuable time that you're using here. Why is Brockmeyer not directly on point here? Brockmeyer, I think, is directly on point. But it expressly authorizes the court with its own authorization. So that ER, then, reference does become really important to me. Yes, it does. And I will find it for you. I've got four and a half minutes. I'm confident I can do it in that amount of time. Page 127, Your Honor. Yeah, page 127, Your Honor. So it's ER 127? Thank you. 127 is the order. And if you look at the briefing on this issue, the order. What does the order say about service? This is the order actually granting entry of the default. But you have immediately prior to that. So this is going to be in pages 128 and subsequent pages. You have the court. This is a supplemental briefing required for the issue. And as you can see, as you look at the docket, the clerk kicked it up to the trial court to ask, said, look, I'm not going to handle as a clerk to enter, like, a clerk's entry of default. I'm not going to handle that. I'm going to have the court do it. The court actually asked us for additional briefing on whether or not it should permit service under the Hague by mail. That's remarkable. Because I don't think you mentioned that in your briefing, that the court expressly gave you permission. No, and you're right. And to be fair on that. So read me the terms of the order that permitted you to serve in Cyprus by mail. So the terms of the order, matters appropriate for decision without oral argument. If considering the moving papers and the arguments therein, the court rules as follows. Clerk shall enter default against the aporilico defendants. The argument to which the court is referring and essentially incorporating by reference there is the one immediately following that in our record. And it's pages 131 through 133 in the record, in which the court, and if you look prior to this, you'll see immediately prior to this is the clerk saying, counsel, what's the page number on which the court said that was OK? What's the ER page number on which? Page 127, Your Honor. So read the order. Read the language that's the magic language here. I mean, it seems like you would have that right at the ready, sir. The court finds that this matters appropriate decision without oral argument after considering the moving papers and the argument therein, the court rules as follows. The request for it is granted. The request for default is granted. Yes, the request for default is granted. That didn't say anything about service. No, but the record is, I think, clear on this issue, and that is that the court required additional briefing on the service issue. No, it's not. The record, you're misleading us. The record is not clear that that is an order on service. That may be why you didn't put it in your briefing. Because it wasn't there. I'm certainly not intending to mislead the court. My apologies, if that's what it appears. I'm sorry. I didn't mean to. OK. You're a distinguished member of the bar. I didn't mean to apologize. No, no, of course. And my apologies if it appears that that's what I'm doing. The issue itself on service under the Hague was separately briefed at the request of the court. No, but was there ever a ruling on that? The ruling was, that ruling was separately briefed by request of the court on the entry of default. You've said that multiple times, but I still don't see in the record where you've pointed me to, or otherwise, where the district court, and this is a significant issue, where the district court specifically said, I will allow service by mail. Is there somewhere in the record that the district court says that? Again, I think our impasse is only because the court actually specifically refers to this briefing in that order. And so when the floor, I think, is referring to this briefing in that order, I think it's absolutely saying, my ruling on this briefing is to grant the default. A referral to the briefing, though, isn't saying the court authorizes service by mail. Earlier in the docket, the court actually says, I'm not willing to do this without further briefing on the service by mail issue. At which point, that's why the individual briefing is there. What I'm trying to find out is, on what page is the ruling by the court discussing and approving service by mail? I think it's built into, and forgive me if that's not a particularly satisfying answer, Your Honor, but I think it's built into the service approving the default. Let me ask you something else in your limited time. Firmly embedded in federal practice and in the rules is the notion that default judgments are disfavored. I mean, you got seven-figure relief. You got attorney's fees, all of which appear to raise contested issues. Why isn't all of this better decided on the merits? Why should we, given what the steps your adversary took to try to appear and defend this case, let you keep all this relief by default? Well, I think the answer to that, and I know I'm over time, and I'll be very quick, I think the answer to that is that this court, our trial court actually was able to see through this process, and this is, again, in the record, that this is very much a hide-and-seek game. The address that is on their website that they contend is clearly an erroneous address. That address is still on their website today, as of this morning, certainly as of the end of the briefing. They have continued to perpetuate this, you can't find us because we're going to give you a false address position. And you argue that to the district court. Absolutely. Do you believe the district court accepted it? That information was all in front of the district court. I can't tell you on what it based its decisions, because most of its orders are minute orders. The district court didn't really only heard one side of that controversy. Well, but that's the nature of a default judgment. The district court had no, it seems to me, warrant to conclude that there was a hide-and-seek game being played until it heard from the other side. Again, under these circumstances, although all the contentions are deemed admitted, all the evidence is deemed admitted against the opposing party in a default situation. And so under those circumstances, that's what the court had. Judge Gould, do you have any other questions? No, I don't. Thank you. Thank you. Thank you very much. I think that the most important point I'd like to make is that the way that you get permission to serve by mail is to make a motion and ask for permission to serve by mail. What happened here is maybe, we don't know for sure because it's not in an order, maybe there's retroactive permission, but the judge didn't put that in an order. We need to have a motion. Can we do it this way? And then we'll serve it this way. The law in Cyprus isn't, well, if you get retroactive permission to serve by mail, that's acceptable. If you have an order to serve by mail, you can serve by mail. We don't have that here. It sounded like most of the points I would like to make were raised already by the panel. And so if you have any other questions for me, I'm happy to answer them. I have a question for you, counsel. If we were to decide that the service of process was improper, so that alone would be the basis to vacate the default and remand. But is the record adequate if we wanted to address the propriety of default judgment in addition as an alternative issue? Your Honor, I think it is. It's possible that you may need an expert to come in and provide evidence on the law of Cyprus in order to finally decide this issue. But I don't believe that's necessary. But it may be that that's the missing piece for you to make a decision. And I'm not sure if that adequately answers your question. But that's my belief, is that's the only possible missing piece. OK, thank you. Thank you very much. Thank you both. Very interesting case. The case of Reflex Media versus April Laco Limited is submitted. Thank you.
judges: Parker, Gould, Murguia